## THE CITY TRUST & SAVINGS BANK, EXR., v. HANLEY ET AL.

*Wills—Trust estates—Title in trustee, when—Residuary clauses construed in favor of heirs, when—Distribution of general residuum—Date governing distribution of surplus fund.*

1. When a trust estate is created by a will which does not, by express terms, vest the legal title to the estate in the trustee, such legal title will vest by necessary implication where the trustee is to manage the estate so as to produce the best financial result, and has power to convert the same into cash, and the will confers no title upon the beneficiaries but expressly forbids them from interfering with the trustee in the execution of the trust.

2. When the language used in the residuary clause of a will admits of two constructions, one of a limited application and the other general in its scope, that construction will be given which will be more favorable to the heirs at law.

3. Item nine of a will, reading in part, "after all bequests have been made as per section eight, I direct that the *lapsed and void bequests* * * * shall be divided equally among the children of my brother * * * or their children * * *. Otherwise, the respective share or shares to revert to my estate," and item eleven of the same will, reciting that "Having provided in my own way for all who may justly claim to be heirs at law * * * any one or more of the beneficiaries * * * who * * * shall attempt in any way to contest * * * shall forfeit all claims or rights under my will" and "The bequests so forfeited shall revert to my residuary estate and be divided as directed in Item Nine," will be construed as limited to the lapsed, void and forfeited bequests, and not effective to dispose of the general residuum.

4. Where a trust estate is created by a will which provides for a general distribution of the trust property upon the death of the *cestui que trust*, a surplus fund arising from the trust estate, and in the hands of the trustee, and not having been disposed of by the testa-

tor's will, should be distributed to those who are heirs at law or next of kin of the testator at the date of distribution named in the will, and not as of the date of the testator's death.

(Decided March 8, 1923.)

APPEAL: Court of Appeals for Montgomery county.

*Messrs. Brown & Frank*, for plaintiff.

*Mr. Philo G. Burnham* and *Mr. D. B. Van Pelt*, for Nannie B. Hale et al.

*Mr. Albert J. Dwyer* and *Messrs. Mattern & Brumbaugh*, for Hanley heirs.

FERNEDING, J. This action involves a construction of the will of Edward W. Hanley, who died March 27, 1915, without issue.

The will was executed January 12, 1915, and was written by the testator, an able and successful business man, but not a lawyer.

In order to carry out the general scheme of disposition the testator created a trust, comprising all his estate remaining at his death except property mentioned in Item VII, which, for the purposes of the present controversy, may be disregarded. Item VII conveys certain real and personal property, and its provisions have been carried out.

The trust created by the will was fundamental. It was interwoven throughout the will, and the various bequests and legacies were dependent upon its execution. While the legal title to the estate of the testator was not by express terms vested in the trustee, yet such title would be so vested by

necessary implication. The trustee was to manage the estate to produce the best financial results, to convert the same into cash, to raise and pay the monthly allowances therein provided for, during the lives of the testator's wife and mother, and to finally make the distribution thereof provided for in the will. No title was conferred upon the beneficiaries in the testator's estate, as represented in the trust fund. Their right was merely to receive their special bequests from the hand of the trustee. The authority of the trustee is confirmed and strengthened by the provision that the beneficiaries, under penalty of forfeiture, shall not interfere with the trustee in the execution of the trust. The beneficiaries were therefore not superior to the trust, but were expressly forbidden from interference therewith.

The trust was, therefore, not a mere naked trust; nor was it a mere power of sale. The trust was the skeleton of the will, supporting and holding together the whole complicated and intricate scheme of distribution. The trust was one coupled with an interest. It therefore carried the title to the estate. The authority given the probate court over the execution of the trust is in the nature of a safeguard, but is not inconsistent with the trust.

By the trust created by the will, with the widow's election to take under the will superadded, the absolute title to the trust estate became vested in the trustee. The prime consideration of the testator, as evidenced by the will, was the support and comfort of his wife, his mother, and his brother William. The wife was allowed during life $350 monthly, and $50 more after the death

of the testator's mother. The mother was allowed $75 per month during life. The brother, William, was allowed $75 per month to continue for 120 days after the death of both the mother and wife of the testator. These monthly allowances were not limited to the income of the estate, but were chargeable, if need be, against the whole estate.

Subject to the monthly allowances, the estate, either in an original or converted form, was to be held and managed by the trustee. Upon the death of the mother and wife the estate was to be distributed.

Item VIII contains bequests to his own relatives, and relatives of his wife, together with other small bequests, in the amount of about $65,000.

The mother died February 4, 1915, in the interval between the execution of the will and the testator's death. William Hanley, the brother, died January 7, 1918. The widow died intestate August 12, 1920.

The estate has been converted into cash. The debts and costs of administration and the special bequests of Item VIII have all been paid and there still remains about $165,000 for distribution. Mr. Hanley, at the time the will was executed, had a large amount of personal and real estate and carried a large indebtedness. The value of his net estate at the date of the execution of the will, and at the time of his death, would about equal the amount of the bequests in Item VIII. It is also shown by a letter addressed to his wife, and found among his papers, that he feared that his entire estate might not be sufficient to support his wife, as provided in the will. It would appear from all the evidence that he did not contemplate a sub-

stantial surplus in the final distribution of his estate over the special bequests set forth in Item VIII.

The main item of his estate was the "theater property," which he feared might not turn out a good investment. Contrary to his expectation the theater property, under the influence of war times, greatly increased in value, and is responsible largely, if not wholly, for the surplus now for distribution. The controversy is over the distribution of the surplus.

The case has been ably argued by the respective counsel, and as a feature of the argument of counsel for the Hanley heirs we are furnished with a copy of the opinion of Hon. John A. McMahon. Conflicting claims are made by the collateral relatives of Mrs. Hanley, who were spoken of generally as the "Hales," and the collateral relatives of the testator, who were spoken of as the "Hanley heirs." Counsel for the Hales contend that this surplus or residuum is disposed of under the ninth and eleventh items of the will. These items are as follows:

9. "After the death of my mother, Anna Hanley, and my wife, Carrie J. Hanley, and after all bequests have been made as per Section Eight (8), I direct that the *lapsed or void bequests,* after all expenses of administration have been paid or provided for, shall be divided equally among the children of my brother, William Hanley, or their children, if any, and Ella Louise Whitehill, Nannie B. Hale, and Bessie May Hale, or their children if any. My purpose being that if any of the children of my brother are dead, the share to go to their children only and not to any other heirs.

And the same purpose to cover the share apportioned to Ella Louise Whitehill, Nannie B. Hale and Bessie May Hale. Otherwise, the respective share or shares to revert to my estate. This division shall be made per capita and not per stirpes.''

11. ''Having provided in my own way for all who may justly claim to be heirs at law, I desire to stipulate that any one or more of the beneficiaries under this will who may refuse to accept their respective bequests, and shall attempt in any way to contest the same or interfere with my executor in the performance of duty under the law, shall forfeit all claims or rights under my will. The bequests so forfeited shall revert to my residuary estate and be divided as directed in Item Nine (9).''

The evident purpose of Item IX was to make a redistribution of lapsed and void bequests; no other purpose appears. The general provision is followed by a concrete explanation. Likewise Item XI was made for the evident purpose, first, to provide for forfeiture of bequests under certain conditions, and, second, for redistribution of forfeited bequests. The opening sentence of Item XI was declarative of the general scope of the will, but could not be made effective as words of exclusion.

''A testator cannot, by any words of exclusion used in his will, disinherit one of his lawful heirs, in respect to property not disposed of by his will.

''Such words cannot be used to control the course of descent, so as to carry the property to his other heirs.

''They cannot be used to raise an estate by implication in favor of his other heirs; there being no attempt in the will to dispose of the property

or to create any interest therein." *Crane* v. *Doty,* 1 Ohio St., 279.

Counsel for the "Hales" contend that these items are enlarged by the following in Item IX, "otherwise the respective share or shares to revert to my estate," and the following in Item XI, "bequests so forfeited shall revert to my residuary estate and be divided as directed in Item 9."

It will be observed that the dispositive words in both items carry only the special fund arising out of the lapsed, void and forfeited bequests. It may also be noted that as a matter of fact there are no lapsed or void bequests, as mentioned in Item IX, nor are there any forfeited bequests, as mentioned in Item XI. It is claimed, however, that the use of the words, "my estate," and "my residuary estate," in connection with the reverter of the special fund thereto, would enlarge the dispositive words and carry the general residuum by implication.

The solution of this proposition is not without some doubt. We are aided, however, by the case of *Davis* v. *Davis, Exr.,* 62 Ohio St., 411. The syllabus is:

"When a residuary clause in a will admits of a limited application as well as of one of a more general character, it should be given that construction which will be most favorable to the heir-at-law."

Judge Williams in the opinion in this case, at page 417, cites with approval from the old case of *Bane* v. *Wick,* 19 Ohio, 328, as follows:

"If the language of the testator, in a residuary clause of his will, will admit of a limited application, as well as one of a more general character, a

court of equity will give it that construction which will be most favorable to the heirs at law."

Both the *Davis* case and the *Bane* v. *Wick* case cite with approval the following from 1 Jarman on Wills:

"In the construction of wills, conjecture is not permitted to supply what the testator has failed to indicate; for, as the law has provided a definite successor, in the absence of disposition, it would be unjust to allow the right of this ascertained object to be superseded by the claim of anyone not pointed out by the testator, with equal distinctness."

A study of these cases, and an application of the principle therein announced, convince us that as against the heir at law the direct dispositive words of Item IX and Item XI, purporting to deal with lapsed, void and forfeited bequests, should prevail, as a statement of the purpose of the testator, over the somewhat doubtful inference arising from the incidental use of the words "my estate" and "my residuary estate," and require us to hold that such items are limited to the special fund aforesaid and are not effective to dispose of the general residuum.

The surplus fund now for distribution, not having been disposed of in express terms by the will, and the heir at law not having been excluded therefrom, would go by implication to the testator's heirs or distributees. *Devenney* v. *Devenney*, 74 Ohio St., 96; *Crane* v. *Doty*, 1 Ohio St., 279.

The final question is, who are the heirs or distributees entitled to receive the surplus fund?

It is contended that the surplus fund would in any event descend immediately upon the death of

Edward Hanley to his widow, and, upon her death, one-half would go to her next of kin.

The situation is complicated and unusual. The testator's estate was wholly non-ancestral and was acquired solely by his own efforts.

It is also in evidence that the entire estate of the widow, including that which passed under Item VII, consisting of the residence and the house occupied by the Hales and the real estate on Harshman street, together with the life insurance made payable to her, passed upon her death to her collateral heirs, she having died intestate. The widow elected to take under the will, and the title to the estate thereby became fully vested in the trustee. The widow by her election became barred of her dower, and all other rights inconsistent with the will. *Geiger, Exr.,* v. *Bitzer,* 80 Ohio St., 65.

Inasmuch as by the will the legal title to the estate passed to the trustee, it would be inconsistent for the widow to claim any title as against the trustee, and if she had taken any title to the estate, vested or contingent, she and her heirs would be barred to assert same; and such title in the widow, if any existed, would necessarily be taken and held by the trustee for the purposes of the trust.

The conclusion that the widow was barred of all interest and title in the estate of the testator, except such as was given under the will, is strengthened by the fact that she was the main beneficiary under the will. The testator built the whole scheme of distribution upon the idea that his widow was to be fully provided for even if it consumed the entire estate, and we think it would be entirely inconsistent with the scheme of the will

for her to retain some interest as heir of the tes-
tator.

Besides, in determining the question of distribu-
tion, the will itself is not to be set aside or weak-
ened. The will must first be fully carried out.
The trust was absolute during its existence and
until the time arrived for final distribution. The
heirs do not take by inheritance, but take the un-
disposed of fund under the preference provided
in the statutes as well as the natural law of kin-
ship. There was no undisposed of property in a
legal sense at the death of the testator. The sur-
plus fund arose as a natural incident of the times,
and as a result of the trust. The will was re-
quired to be first executed, and its provisions car-
ried out, consequently the emergency would arise
in the execution and settlement of the trust, only
when the fund was for distribution. The law
would then cast about to ascertain the persons
naturally entitled to the undisposed of fund. And
this view has been applied in some of the decided
cases in Ohio. *Barr* v. *Denney,* 79 Ohio St., 358;
*Hamilton* v. *Rodgers,* 38 Ohio St., 242; *Richey,
Exr.,* v. *Johnson,* 30 Ohio St., 288, and *McCrea* v.
*McCrea,* 22 C. C. (N. S.), 433.

In the opinion of Hon. John A. McMahon the
point is made with considerable force that the Han-
ley heirs would take by implication under the will,
that is, the heir being favored over the residuary
legatee the inference would arise that the testator
intended by implication that the general residuum
should go to his heirs. This opinion is not with-
out force, and if sustained it would simplify and
make more certain the conclusion which we have
reached, independent of that view. We have there-

fore arrived at the conclusion that the surplus fund in the hands of the trustee should be distributed to those who were heirs at law, or next of kin of the testator, at the period of distribution named in the will.

*Decree accordingly.*

KUNKLE and ALLREAD, JJ., concur.